Good morning, Your Honors. Kelly Dunn for Appellant Jenny Catalano. This is a Social Security case that's unusual in terms of its procedural, how it got here. It's based on a claim that was filed in 1981 for disability benefits. That case was eventually reopened pursuant to a class action settlement out of New York in 1989, and it's made its way now to this court room 25 years later. Ms. Catalano did apply, reapply for benefits in 1984, and she was granted on the basis of disability at that time. So we're really dealing with a time period in this case of December. Just a two-year period. Yeah, less than. She got benefit for the other 27 years that she was. Counsel, let me tell you what bothers me about this case. Neither counsel cited at least four of our most recent Ninth Circuit cases dealing with the need to make specific findings or as opposed to specific reasons for the holding. Can you give me your best argument for having to find specific findings? I believe you did cite to the Bunnell case, but there we seem to be going in two directions in this circuit, and that was not part of the discussion in the briefs. Would you give me your best argument why specific findings as opposed to specific reasons should be given? Well, on the central issue of this case, which is whether she had a psychological impairment that could cause the symptoms, cause the limitations and symptoms that were at issue, the chest pains and so forth. And he discussed this in his decision, but he did not make specific findings. That's right. He could find the reasoning in his decision, but no specific findings. Why should specific findings have to be made? Well, specific findings, the only specific findings he made regarding the central issue of material impairments were on whether were two physical severe impairments. The question is, is it sufficient to have specific reasons that they do, even if they're not findings? You can assume for purpose of the question that he did give specific reasons, even if he didn't. Okay. But the question is, if he had given specific reasons for a credibility finding and said, here's why I'm making a credibility finding, would that be enough without a finding? No, it would not be enough without a finding, because the findings, the regulations are very clear in terms, and the rulings, the Social Security rulings are very clear in terms of the analysis that the judge is required to make to reach his findings. If he makes an analysis but does not say where that goes, what is the finding that supports that he is supporting? What is the reason that supports it? Well, in this case, he offered no reasons on any of the critical issues. Well, I said assume that he did offer reasons, which I agree with you he didn't. But if he had offered reasons, would that be enough without a specific finding? Well, I think that might depend on what the — in general, I would say no. It might depend on what the finding is and how the reasons are stated. If it's very clear from the reasons what, you know, perhaps what that finding is that he's — he just forgot to put in the sentence, I therefore find she's not credible, but he's just given six reasons why she's not credible, then I don't know that the absence of stating that would necessarily require reversal. But I think it certainly could, because that's ultimately the decision is based on the findings. And the analysis is one part of that. The ultimate findings that the judge reaches based on that analysis is critical. And in any given finding, there may be a level of interpretation that could flow from reasons that are given that's not clear. Is this finding — is he finding all of the testimony lacking in credibility? Which specific statements is he finding are not credible? There's the case law which does say that you must, in terms of credibility, the ALJ must identify those statements that he finds credible, those which he does not find credible, and the reasons for that. So if he gives some reasons, but they're not specific enough to say, well, which statements, because ALJs in these cases will often state, I find the claimant partially credible. They don't say, well, I find them lacking in credibility with regard to this specific issue. Well, he said, I find it credible to the extent that's consistent with my decision. Right. Which is so general, that tells the Court, the revealing Court must have something to know. What was the judge's decision based on? What are you revealing? Well, there are two separate questions. One is, to what extent must he state, I find X part of her testimony not credible is one question. The other question that Judge Nelson was asking about is, what does he have to say to justify that finding, assuming the finding is clear enough? Does to what extent does he have to link the reasons or explain why he is finding whatever he finds not to be credible? I think he has to provide reasons that are obviously based on substantial evidence and that make sense, that are clear and convincing or legitimate, depending on the applicable standard in that case. Well, let's assume he gave reasons in his decision, but then he gets down to findings. Right. And does not make a finding based upon the reasoning in his decision. Is it sufficient to have given the reasons in the decision and not put them in the finding? I would say it's not sufficient. In general, that is not the case. Because? And not if your case … I'm sorry, Your Honor, I can't cite you a case off the top of my head on that issue. But I would say that the regulations require an ALJ to reach findings. The regulations and the rulings require an ALJ to reach findings. And so the lack of doing that would be an error. There is a case called Bunnell v. Sullivan, 947 F. 2nd, 341, 1991 case on Bonk. Which has recently been cited in cases throughout the circuit, such as Robbins and Schaefer, that says you need specific findings. That might help your case. Okay. There are also cases on the other side. And we have a split in this circuit. Mm-hmm. But I was just interested in whether or not … Okay. Yeah. And I was not prepared, obviously, for that issue, because I think in this case, we don't have reasons. We don't have findings. We don't have the judge considering the central impairment, which is a psychological impairment. He says expressly in the decision, the claimant had no psychiatric treatment during the time period at issue. She had six months of psychiatric treatment. She had a diagnosis from the treating psychiatrist that said she had a psychophysiological GI and cardiac disorder, which is the basis of all of her symptoms. The ALJ did not even mention the psychiatric report and, in fact, said she didn't have psychiatric treatment. So clearly, he wasn't even aware that there was a psychiatric diagnosis here. All of the other medical evidence, Dr. Monaco, Dr. Richmond, other doctors, even the doctor at the hearing who testified, Dr. West, all referred to psychosomatic problems, psychosomatic issues. So the ALJ did not consider the central impairment. He just looked purely at was there a physiological cause for the symptoms and limitations that she was describing and relied on Dr. West's testimony. Now, the commissioner is arguing that the reliance on Dr. West's testimony is fine, that the ALJ could do that. The trouble is, if you read Dr. West's testimony, the ALJ is relying only on that portion of Dr. West's testimony that is really talking about were there physiological causes for her symptoms. When you read, there's many points, and they're quoted in the brief, where Dr. West talks about she reacted emotionally to stress, and this type of psychosomatic or, quote, whatever you want to call it, reaction would result in absences at work, and it would result in her inability to maintain work. The judge entirely ignored that testimony. He focused solely on Dr. West's testimony that her heart was deconditioned, it appeared, and therefore, she could do sedentary-to-light work. But that was clearly based just on the deconditioning. It had nothing to do with the anxiety, with the reactions that she had, all of her testimony. And most of her testimony is really in the form of extensive written statements in the record. So I'll resume. We have about a minute left. Thank you. Good morning, Your Honors. My name is Leo Montenegro, appearing for the Appellee Commissioner of Social Security. At the outset, I want to point out that I disagree with opposing counsel's characterization of the main issue in this case, that is, whether there was a psychological impairment or a cardiac impairment or, as is mentioned elsewhere in the record, the possibility of a gastro or a gastric impairment. All of these are leading to the same symptom which Klayment is alleging to be to have been disabling back then, which was chest pain. So while there's confusion in the record as to what caused the chest pain, that confusion is largely irrelevant because the ALJ conceded or found that Klayment did have chest pain, and the question then became to what degree did this chest pain affect Klayment's ability to work during that period of time in the past. Now the problem I have with this case, the administrative law judge, he said he found Cotillero's testimony credible and reliable to the extent that it is consistent with this decision. Assuming he discredited some of the testimony, what was his basis for doing so? Well, Your Honor, you're referring to the enumerated findings where the ALJ did make that finding, if I'm understanding the questioning that went on earlier. And I want to know what that finding means. Yes, Your Honor. In referring back to the ALJ's discussion of the evidence, and the ALJ said that he relied primarily on the testimony of the medical expert witness, Dr. West, here. The ALJ had received testimony from two separate expert witnesses, a medical expert witness, and a vocational expert witness, to look at the vocational factors involved. And by looking at Dr. West's testimony on this record, that was one of the reasons that the ALJ had to support his credibility finding to the extent that it was adverse. What did Dr. West say that made him think that the witness was not credible? Well, not credible, Your Honor, to the extent that she was alleging disabling subjective symptoms. Dr. West's testimony was based on the medical evidence back then, during that period of time. What did Dr. West say that made the ALJ doubt that she had the subjective symptoms? Dr. West pointed to the many evaluations that claimant had had during that time for her chest pain, allegedly disabling chest pain. You didn't deny that she had the chest pain. Oh, no, Your Honor. No. Well, then what is it that's inconsistent in her testimony? Well, that despite her allegation of disabling chest pain, I believe Dr. West pointed out in his testimony that no cause was ever really determined for this, certainly no cardiac cause. It was speculated that it might be psychological or that there might be other reasons for this. But he didn't doubt that she had the subjective reactions to the pain. The pain was there. Oh, that's correct, Your Honor. She said that she had caused her to go to the hospital numerous times. She had to stay home for two or three days at a time. Did Dr. West say anything that disputed that? To directly contradict her testimony? No. No. Dr. West's testimony had to do more with the level of treatment, the level of evaluation that she received during that time for the unexplained chest pain. There's no reason, then, to doubt her testimony about her subjective symptoms that resulted from the chest pain. Well, I think based on this record, with the type of evidence you have, with none of the positions at that time No, no. I said Dr. West. It's Dr. West, which is what you were relying on and what the ALJ was relying on. Yes. The ALJ had There's nothing in his testimony that supports a finding of lack of credibility. Well, it's not It wouldn't be his place. It wouldn't have been Dr. West's place, that is, to refute I didn't ask you why there's nothing. The answer you're giving is there is nothing in Dr. West's testimony that would support a finding of lack of credibility. Oh, no, no. There's His testimony itself is evidence supporting the ALJ's finding, but to the extent that the Dr. West should have or could have evaluated her credibility, that really wouldn't have been his place, although if he did I didn't ask whether he should evaluate it. I said there's nothing in his testimony that would render the claimant's testimony incredible. I disagree, Your Honor. His testimony I'm asking you what it is. He testified that claimant had been evaluated multiple times, but no real cause had been found, or at least no definitive cause had been determined for a chest pain. There was no definitive cause, and he said that he didn't doubt that she was experiencing the chest pain, and that that's true, Your Honor, and the ALJ found out that there was the it's conceded that claimant was suffering chest pain during that time. And the claimant had been evaluated multiple times, and her the cause of her chest pain was not readily determined, and also that she hadn't been treated significantly, partly because it couldn't be really assessed what was physically or psychologically wrong with her. So this level of evaluation, these evaluation results, this level of treatment given to her at that time just wasn't consistent with her alleged disability or her allegation that her subjective symptoms were so extreme that she couldn't report back to them. You didn't say that Dr. West didn't say that her subjective symptoms were so extreme that you couldn't believe them. No, no. But as I was saying earlier, Your Honor, that wouldn't have been Dr. West's place to evaluate her credibility that way. So it's not Dr. West's testimony that makes it's a basis for the ALJ's determination of lack of credibility. It's his testimony to the extent that it was his medical expert opinion about what the medical evidence back then said and whatever and however he interpreted that. Now, none of the other doctors at that time, which, as Dr. West pointed out, found claimant to have any disabling functional limitations. They couldn't find anything definitively wrong. Well, they couldn't find out, and maybe if they'd looked two years later, they would have found out that she did have a heart attack. Yeah, and Dr. West addressed that, too. I mean, that was certainly one of the Dr. West's focuses in his testimony. He was very interested as a physician himself as to what was going on over the entire period of time, not just the period relevant in this case. And he was asked, I think by opposing counsel, whether the fact that she subsequently became disabled had any bearing on the relevant period here. And Dr. West replied that he just didn't know. It's certainly possible, but he just couldn't tell from the record. He was certainly not going to tell. Where in the ALJ's report do you find his explanation for his determination that to some extent there was a lack of credibility? Where does he say his reasons for that finding? Well, Your Honor, the ALJ refers to Dr. West's testimony. Okay. That one we just determined that Dr. West did not say anything about her subjective symptoms being excessive or false. No. He didn't. He didn't evaluate claimants' credibility. All right. What else did he say as a reason for a finding of lack of credibility? He also looked to her, well, I can read from his decision, the claimant appeared as an elderly lady in no apparent distress. She had no problems sitting, walking, or testifying that could be observed by a layperson. She was articulate and had no difficulty with her memory. The ALJ also pointed out that he wasn't basing his entire decision on these observations. But this was, as opposing counsel pointed out, some 20 years after she allegedly had become disabled and the fact that she was functioning well enough, as observed by the ALJ at the hearing, counted against her in that regard, that her, counted against her allegations that she was subjectively disabled back then 20 years earlier when at the time of the hearing she seemed to be functioning just fine. Okay. But in this case, Your Honor, I think the credibility finding has to be looked at against the background of this particular set of facts, the set of facts being, as Dr. West explained, that they just couldn't ascertain what was wrong with her back during the relevant period. They'd evaluated her over and over again, reached different conclusions. Dr. West, after reviewing all those records, reached another conclusion. I think he based, for what it's worth, he said that she had chest pain because of her deconditioning. The ALJ accepted that, and as to the extent of her chest pain, the ALJ looked to the factors that he mentioned, which included the medical evidence discussed by Dr. West, and given that Wasn't there evidence in the record that she would probably be absent a great deal, which would make it difficult for her to hold down a job? Dr. West did say that. He said that, he mentioned that his, I believe in two different places, that his, that the main problem would be her ability to sustain work or to appear for work. But each time, I believe he followed up by saying that accounting for that, that the claimant could do, in his opinion, sedentary to light work. So to the extent that he, to the extent that that was his opinion, he accounted for that when he said that she was limited to sedentary to light work. Her past work was sedentary work? The vocational expert testified that her past work was sedentary work. So she had worked as a, as the, as she had put it, I believe, a Girl Friday doing a variety of administrative tasks in an insurance office. And she was, this, so the time of the hearing was in 1981? The hearing was, I believe, in 2000, around 2002. The ALJ's decision was 2003. And so the relevant time is Yes, you're right. 1980 to 1982, about a year and a half, two years. And she was about 55 or 56 years old back then during the relevant period. Yes, but she's now 80? 83. But as was pointed out, she's been receiving benefits since 1984, around about then. Your Honor, I see that I've run out of time. If there are no further questions, I just want to say that the ALJ's reliance on the expert witnesses was reasonable and that their opinions constituted substantial evidence supporting the ALJ's decision. Thank you. Just very quickly, Dr. West testified at 405 here, I can't find a significant cardiac problem other than the unexplained chest pain, which may be due to emotional factors, could be esophageal, other GI, et cetera. So he's clearly stating this may be emotional. We have a psychiatric diagnosis which is uncontradicted in the record and is supported by the record that she had a psychological condition that could cause these pains. So once you have that condition that has these symptoms, there's no dispute that what flows from that are impairments that the judge must consider, and he failed to consider those. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Jose Rojo versus Mukasey.
judges: Schroeder, D.W. Nelson, Reinhardt